WILLIAM M. NARUS, CAB #243633
Acting United States Attorney
District of Oregon
**NICHOLAS D. MEYERS, OSB #222743**
Nicholas.Meyers@usdoj.gov
**ARIANA N. GAROUSI, CAB #347758**
Ariana.Garousi@usdoj.gov
Assistant United States Attorneys
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00095-IM** |
| **v.** | **GOVERNMENT'S TRIAL MEMORANDUM** |
| **NELSON PABLO-MORALES,** | |
| **Defendant.** | *Trial 06/03/2025* |

The United States of America, by William M. Narus, Acting United States Attorney for

the District of Oregon, through Nicholas D. Meyers and Ariana N. Garousi, Assistant United

States Attorneys ("AUSA") for the District of Oregon, provides this memorandum addressing

issues related to trial in the above-entitled matter.

## I.    PROCEDURAL BACKGROUND AND STATUS OF THE CASE

On March 11, 2025, a federal grand jury issued a one-count indictment charging

Defendant with having been found in the United States without consent after having been

**Government's Trial Memorandum – 3:25-cr-095-IM,** *U.S. v. N. Pablo-Morales*    **Page 1**

previously removed, in violation of 8 U.S.C. § 1326(a).  Trial is scheduled to begin on June 3, 2025.  The government expects the trial will last two days.

## II.    FACTUAL BACKGROUND

Defendant is a Mexican citizen by birth.  He has been removed from the United States for illegal entries twice.[1]

On October 20, 2012, Defendant entered the United States illegally from Mexico by crossing the Rio Grande River near Hidalgo, Texas.  On October 25, 2012, Border Patrol agents encountered Defendant near Mission, Texas.   After questioning, Defendant stated he was a citizen of Mexico and admitted to being in the United States illegally.  On October 25, 2012, Defendant was allowed to participate in the Alien Transfer and Exit Program ("ATEP") and voluntarily returned to Mexico from the United States at McAllen Station in Texas.

On June 18, 2015, Defendant was arrested for Reckless Driving and Driving Under the Influence of Intoxicants in Beaverton, Oregon, after he crashed into a parked car.  On July 13, 2015, Defendant pleaded guilty in Washington County Circuit Court Case No. D152201T and entered a one-year diversion program.  Defendant's June 18, 2015, arrest brought him to the attention of the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") personnel.  He was subsequently arrested by ICE officers on March 25, 2017.  At the time of his arrest, Defendant admitted he was a citizen of Mexico.

On April 27, 2017, an immigration judge ordered Defendant removed.  On May 9, 2017, Defendant was removed from El Paso, Texas, to Mexico City, Mexico.  His removal was

---

[1] As described below, his first "removal" was a voluntary return rather than a formal removal. He was caught by immigration officials, determined to be in the United States without authorization, and sent back to Mexico with warnings not to illegally reenter. For ease of reference herein, the government at times uses the term "removal" to cover both apprehensions.

**Government's Trial Memorandum – 3:25-cr-095-IM, *U.S. v. N. Pablo-Morales*          Page 2**

verified by an ICE Form I-205 Warrant of Removal ("Form I-205"), which contained a pressing of his right index fingerprint and was signed by an officer who witnessed the removal.

After that removal, ICE officers again learned of defendant's presence in Oregon and investigated. On February 11, 2025, ICE officers observed Defendant exit his residence in Beaverton, Oregon, get into his registered vehicle, and drive away. ICE officers followed Defendant and subsequently initiated a traffic stop. ICE officers identified themselves and asked to see Defendant's identification. Defendant provided an Oregon driver's permit with the name Nelson Pablo-Morales. Defendant was arrested and transported to ICE's Enforcement and Removal Office. That day, ICE personnel entered Defendant's fingerprints into the Integrated Automated Fingerprint Identification System ("IAFIS") while he was in ICE custody. Defendant's fingerprints showed a positive match for Defendant's prior criminal and immigration record.

On March 3, 2025, qualified examiner Brenda Bass compared Defendant's fingerprints pressed by ICE personnel on February 11, 2025, to the right index fingerprint memorialized on the executed Form I-205. She confirmed that the fingerprints pressed on February 11, 2025, and the fingerprint from the Form I-205 from the 2017 removal were made by the same person.

ICE reviewed Defendant's A-file and associated electronic databases and found no record of Defendant applying for, or being granted, permission to reapply for admission after his 2017 removal.

## III.    APPLICABLE LAW

### A. Removed Alien Found in the United States

Defendant is charged in Count 1 of the indictment with being an alien who, after removal, was found in the United States in violation of Section 1326(a) of Title 8 of the United

States Code.  For Defendant to be found guilty the government must prove each of the following

elements beyond a reasonable doubt:

> **First**, the defendant was removed from the United States;

> **Second**, thereafter, the defendant voluntarily entered the United States;

> **Third**, after entering the United States the defendant knew that he was in the United States and knowingly remained;

> **Fourth**, the defendant was found in the United States without having obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States;

> **Fifth**, the defendant was an alien at the time the defendant was found in[2] the United States; and

> **Sixth**, the defendant was free from official restraint at the time he entered the United States.

Ninth Circuit Model Cr. Jury Instr. § 7.8 (2022).  An alien is a person who is not a natural-born

or naturalized citizen of the United States. *Id.*  Moreover, an alien is under official restraint if he

is in physical custody of, or under continuous observation by, a United States officer from the

moment he first crossed the border and entered the territory of the United States up until the time

of his apprehension.  *United States v. Cruz-Escoto*, 476 F.3d 1081, 1185 (9th Cir. 2007).  If the

individual was first observed after he had physically crossed the border of the United States, then

he has entered free from official restraint. *Id.*

## IV.    PRETRIAL ISSUES

### A.  Government's Requested Jury Instructions

The parties agree on most of the jury instructions but disagree on others.

---

[2] Modified from the Ninth Circuit model jury instruction as explained in the United States' Proposed Jury Instructions.

**Government's Trial Memorandum – 3:25-cr-095-IM,** *U.S. v. N. Pablo-Morales*        **Page 4**

Consistent with the Court's Trial Management Order, the parties have submitted in one filing joint proposed instructions for those instructions on which they agree and a separate filing with contested instructions.

As noted in the contested instructions, the government requests that the Court provide a brief description of the charge and explanation of the difference between a criminal charge and a civil removal or deportation hearing in its preliminary instruction when it describes the charge associated with Model Jury Instruction 1.2 "The Charge—Presumption of Innocence." The proposed modification is bolded, for the Court's convenience. In that same instruction, as well as the instruction associated with the substantive charge, Model Jury Instruction 7.8, the government recommends a modification of the fifth element from "the defendant was an alien at the time of the defendant's entry into the United States" to "the defendant was an alien at the time he was found in the United States." That modification is also bolded and uses "strikethrough" of the text to clearly identify it. If applicable, the government also requests an addition to Model Jury Instructions 1.3 and 6.6 (What is Evidence) directing the jury not to question why a documentary exhibit has been redacted or speculate what that redaction may be. That proposed modification is also highlighted for the court's convenience.

**B. Government's Requested Voir Dire Topics**

Consistent with the Court's Trial Management Order, the parties have jointly submitted a list of requested voir dire topics. That joint submission identifies objections either party has to certain of the proposed questions.

Before passing the panel for cause, the government asks that the parties be permitted to conduct voir dire of the venire following the Court's questioning. The government will endeavor to conduct efficient voir dire but requests that it not be restricted by time limitations that may

**Government's Trial Memorandum – 3:25-cr-095-IM, *U.S. v. N. Pablo-Morales*          Page 5**

artificially constrict its ability to evaluate a fair jury.  Because this case is centered on an immigration charge being prosecuted in a sanctuary city and state, the United States anticipates that members of the venire may have strong opinions that require careful inquiry.

The United States further requests that the Court ask the members of the venire at the outset of case-specific questioning whether anyone has any especially strong opinions about immigration and, if so, the United States requests that those members be questioned outside the venire panel to avoid tainting the opinions of the other members of the venire.

For cause dismissal is appropriate when there is a "a definite impression that the prospective juror's views 'would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"  *Merced v. McGrath*, 426 F.3d 1076, 1082 (9th Cir. 2005); *see also United States v. Arellano-Banuelos*, 927 F.3d 355, 364 (5th Cir. 2019) (upholding district court's decision to strike a juror for cause after the juror stated that he would have difficulty being fair and impartial because he believed that the immigration laws were too harsh).

### C.  Government Exhibits

The United States has submitted a separate exhibit list, which currently lists eight exhibits.  Defendant objects to seven of those exhibits.  As requested in its motions in limine, the United States seeks preadmission of all exhibits.  The United States reserves the right to amend and update the exhibit list before trial.  The United States further reserves the right to offer impeachment or rebuttal exhibits not listed in the exhibit list for its case-in-chief.

The United States intends to offer documents from the "A-File" maintained by the Department of Homeland Security or its predecessors, that correspond to Defendant's name and A-number, to establish, inter alia, Defendant's alienage, prior removals, and that he was

**Government's Trial Memorandum – 3:25-cr-095-IM,** *U.S. v. N. Pablo-Morales*        **Page 6**

subsequently found in the United States without having sought or obtained authorization from the Attorney General.  The documents, and testimony describing them, are admissible and should be admitted as detailed in government motion in limine #6.

### D.  Government Witnesses

United States has submitted a separate list of witnesses. The United States anticipates calling six witnesses. The United States has filed notice of expert fingerprint examiner Brenda Bass.  The United States has further moved to admit her expert testimony in its motion in limine #7.

### E.  Verdict Form

Consistent with the Court's Trial Management Order, the parties have jointly filed a proposed verdict form.

Dated: April 21, 2025.                                      Respectfully submitted,

WILLIAM M. NARUS
Acting United States Attorney

*/s/ Nicholas D. Meyers*
NICHOLAS D. MEYERS, OSB #222743
ARIANA N. GAROUSI, CAB #347758
Assistant United States Attorneys